Judge Fletcher, please the court. My name is Tim Ford. I represent Don Blondin. The question in this case is whether the clearly established law by which this court decides qualified immunity appeals governs the trials that occur if the court finds that qualified immunity is not appropriate in a given case. In this case, we had a qualified immunity appeal and the court held that qualified immunity was not appropriate. Because there was clearly established law that said, under state law, momentary non-compliance with a police officer's order was not enough to arrest for obstruction. Under federal law, failure to follow and immediately comply with a police officer's orders was not sufficient and not an act of resistance and did not justify the use of more than trivial force. And number three, that a taser was not enough to arrest for obstruction. A taser is a significant intermediate use of force and not trivial force. Those issues were contested by the defense throughout the trial below. They argued that tasers were trivial, that they were the same as putting your hands on somebody, that they saved injuries, that they were reasonable. They made all the arguments that this court rejected in the Matos case and that this court rejected in the appeal of this case. To try and convince the jury that something was reasonable, that this court held on appeal, no reasonable officer could believe was reasonable. Just a minute, Counselor. I want to stop you a little bit because I want to make sure I understand your argument. It seems to me when the summary judgment came up to the Court of Appeals the first time, we were looking then at the facts as alleged by your client. That's correct. In other words, whatever facts your client alleged, they were the facts. It did not matter what the officers were alleging. What the officers had to say was, the facts as alleged by your client did not violate the law. That's correct, Your Honor. When it went back for the trial, the facts as alleged by your client were not the operative facts anymore. At that point, your client had facts and the officers had facts and those facts were presented to the jury. The jury could determine which of those facts they agreed with and which they did not. And it seemed to be that when it went back to the trial court, the jury believed the officers' facts and not your facts. And in fact said, quite opposite to what your facts were saying, that there wasn't a problem here.  I mean, it seems to me that that's the norm. The reason we allow officers to come up here on an ad hoc basis, if you will, is because there's qualified immunity. An officer who has qualified immunity should not be put to trial. And so we make the officer, if you will, take your facts and then say the law as applied to your facts would still make them immune. And we said it isn't so. It wouldn't make them immune. But when they go back, they don't have to take the same facts. They take what the officers say. They take what your clients say. They take what everybody else says. And at that point, they make a decision. What did they do wrong? What did the district court do wrong? The district court let the jury pick the facts. The district court gave the law as appropriate. And the jury said you were wrong. What was wrong? Where did they go wrong? What did the district court do wrong? It can't be wrong not to say your facts are the facts. We're certainly not going to argue that. So what was the jury instruction? What was the problem with the jury instruction? What the jury instruction was given? I read the jury instruction given. I read the jury instructions you want. The jury instruction given was the model instruction. It wasn't. Well, you're saying it wasn't the model because they didn't add a factor to consider where the warning was given. They left out severity of the crime. Supposing they gave the model instruction, would you be here? Yes, we would be here because there were other instructional errors and because accepting everything that the officers said, we absolutely understand that. Of course, everything the officers said is accepted as true. If you still believe everything they said, the same basic facts exist, that Don Blondin was standing with his hands by his side, made no threatening gestures, no threatening statements, and did not move. But evidently the jury doesn't believe that. The jury believes the officers who said quite opposite, that what he did was, I mean, if you want me to go through, I guess he inserted himself into an already dangerous situation. That's not what the officers said, Your Honor. That's what their lawyers said. Well, that's what the jury found that the officers were saying. They did not say it, Your Honor. No rational juror could find it because no officer said that Don Blondin did anything other than walk up and say, what are you doing to Jack with his hands by his side? He did not approach after he was told. They didn't say he took a bladed stance? One of the officers. They didn't say he didn't step back? He didn't put his hands up or convey any willingness to comply? They didn't say he came within 10 feet? They didn't say he ignored as many as 12 commands to desist over a 30-second period of time? They didn't say he ignored the warning to step back or be tased and arrested? They didn't say he called, what are you doing to Jack? They didn't say the other events were happening at the same time? I read the record. I think they did say that. Well, there were a lot of things there, Your Honor, and I guess I would like to go over them one at a time. If I had time, I won't because I don't. But the problem is that they did say all those things. What does it amount to? It amounts to a failure to immediately comply with a police order. That's the most it is. There was never a threat. And if you think about it, really, this whole thing was a house of cards built by lawyers because what the officer said is that he shot Mr. Blano with a taser because he thought he had probable cause to arrest him, and that's all he needs. He testified, I tell you to move, you don't move. I tell you again to move, you don't move, I shoot you with a taser. That was Nahomish policy. That's what he said the reason was. All this rhetoric is lawyer rhetoric because think about this. Their argument is he was creating a distraction, and that's what was dangerous. No officer said they were afraid he was going to come hurt them. The reason was Officer Shelton was standing in front of him. He was there, whether 10 feet, 20 feet, whatever you want to believe. Officer Shelton says 20 feet. Officer Shelton was standing there in front of him with a taser pointed at him. He was standing there with his hand down by his side. The officers were behind him. There was no threat. What there was was a distraction, and every officer said the distraction was caused by Officer Shelton screaming and then by Officer Shelton shooting a taser at a man who was standing there saying, and you can hear him on the audio, what are you doing to Jack in a normal tone of voice? That's what really happened. Yes, we understand that you accept everything the officers said about the facts, but what they did was argue that the law, they argued that it was reasonable to use a taser if someone doesn't immediately comply. The jury instructions were given. I understand what you find wrong with the jury instruction given of when it is appropriate to use the taser when you're using jury instruction model 9.22. What's wrong with the jury instruction they gave about the definition of when, on the definition of the crime, obstructing a public servant? Because it did not include the element of actual instruction that Washington law includes and that this court said, and the Washington court has more recently said, in a case where a person ran toward the police, ran back, ran back to them, ran again, went over and over, and the Washington Supreme Court said, as a matter of law, that is not obstruction. What do I do with Lassiter? With Lassiter, you have a completely different kind of a factual situation. You have a situation where there's an actual physical obstruction. Somebody's in the way of somebody else. Remember, Mr. Lassiter was in the way of Mrs. Lassiter. He would not let the police proceed with an investigation of him threatening to have somebody cut their throat. And that's the difference in this jury instruction, the pattern instruction. I guess the problem comes in that if, in fact, the court gives a regular general jury instruction and you argue they ought to give a specific instruction that will help your client in a particular way and the court doesn't give that instruction, that somehow it's an abuse of discretion. I've been in your situation before.  because they never help my client, and I always propose one specific to my client, and they never gave them. But when it is a standard of review, which is abuse of discretion, as to what jury instructions are given and do they cover the situation that's before you, then I've never found a court to suggest that it's abuse of discretion not to give the specific instruction you want out of a particular case. Well, when you have a constitutional limitation on a police action and the constitutional limitation says it takes more than momentary noncompliance, you can't just say obstruct and not define it and then let counsel argue that momentary noncompliance is a violation of obstruction. What he should have done was grant a directed verdict because there was no evidence that Don Blondin did anything other than momentarily fail to comply with this officer's commands. And Washington law says that that's not sufficient. But the other thing, the 9.22, the standard instruction, it was modified drastically because it took out an element and it put in an element of excessive force. It took out the element of whether Don Blondin had committed a severe crime. That's the first element under Graham v. Connor. The gravity of the offense for which the defendant is being arrested. Don Blondin was being arrested with this force of this taser. These taser darts shot into him. The gravity of that offense is the number one factor under Graham v. Connor. It was taken out of this instruction over our objection. And instead, it was put in the gravity of the circumstances. So they could just say, well, consider everything.  This force is not enough to shoot somebody with a taser. That's what this court has said. So you can't just say, consider everything. You have to take that out because it's not constitutional to base the action on that. That was the problem. But the bigger problem was the undisputed facts were that Don Blondin did nothing more than what this court said could not constitutionally be the basis for this level of force. And that they challenged what this court held in bank about the taser and its severity. I'd like to save some time. Thank you. May it please the court, Richard Jolly on behalf of Jeff Shelton and the city of Snohomish. The first thing that I would submit is that momentary a phrase used over and over again in appellant's opening argument is a question of fact for the jury. And the evidence that was presented at trial ranged from Mr. Blondin conceding that this went on for approximately 15 seconds in his mind when he was noncompliant. A time that he admitted would permit him to get off of Mr. Hawes' property back to his property and even into his house to the time frame as offered by the seen witnesses independent witnesses, civilians that were there on the sidewalk that put it anywhere from 30 to 45 seconds to one of the officers testifying that it could have been a minute. So momentary is a question of fact. And the idea that there is a law of the case that applies that should have resulted in judgment as a matter of law because Don Blondin was only momentarily noncompliant that is open for dispute and the court is well aware of what the standard is to find the judgment as a matter of law applies. I'd like to begin by discussing the arguments from the plaintiff that the rule of the case somehow dictates that this verdict should be overturned. We would submit first off that the law of the case doesn't apply here because the district court didn't decide earlier the Ninth Circuit didn't decide anything related to the facts as it applies to the parties. And we'll readily admit that Taser application that the Ninth Circuit has made it clear that that's intermediate force. But the appellant cannot point to a single thing in the record that would indicate that when we tried this case that we offered anything that would directly contradict the Ninth Circuit's holding that a Taser is intermediate force. The record is utterly void of that. In their briefing they assert that we argued to the contrary. That's not true. You can look through the record high and low and there is nothing there that indicates that we told the jury either through factual testimony or through argument that what happened here the application of the Taser was not intermediate force. And just because the lower court or earlier in summary judgment that the court ruled that the Taser is intermediate force or looked to the holding in Bryan v. McPherson didn't preclude the city and Jeff Shelton from putting on evidence as to what actually happens when someone suffers a Taser application. We put on testimony from an emergency room doctor from San Diego, California, Dr. Ted Chan who has done studies funded by the Department of Defense regarding the impact of Tasers and he explained to the jury, yes, it's intensely painful but the physiological impact of that is nothing more the after effects are nothing more than what one would relate to a brisk walk. There's nothing contradictory about a holding that a Taser is intermediate force and the defendants putting on evidence about what actually transpires physiologically when a Taser is applied. Did the instructions as given by the district court conform to the law as set out by our circuit when the case went up the first time? Absolutely. Looking at the comment to the use of force instruction the comment references this court's holding in Himmett v. Smith v. Himmett. Because it seems to me that that's what your opponent your good opponent is arguing. We went up on appeal and they said what the law was as it relates to this particular case and then when we went down to the district court they said that they applied a different version of the law and therefore they applied it wrongly. It seems to me that's his argument. I thought at first it was they've got to have the same facts but he agreed with me, they don't have to have the same facts. He's come off that argument. I read his brief, I wasn't sure what he was really saying. But now we're really saying, hey, we went up, we know what the law is, why wasn't that law applied in the jury trial? The trial court has latitude to fashion the instructions. The comment to the use of force instruction specifically references the language in Smith v. Himmett that says objective reasonableness is that a mechanical application for objective reasonableness is not what the Fourth Amendment is actually dictating. The mechanical application is incorrect. And here we will concede that the crime that Mr. Blondin was committing, obstruction, while it's a crime, it is a very minor one. But the surrounding circumstances made the impact of the crime that he was committing to be very severe. And the trial court tailored the instruction to read the severity of the circumstances. That did not preclude Mr. Blondin from arguing to the jury that the crime itself was inconsequential. He was allowed to argue his theory. It was in keeping with the law, and we think that the trial court was well within its latitude in tailoring the instruction, and we think there's nothing contradictory about the instruction as compared to the ruling earlier on summary judgment. Now here's a question that occurred to me as I was preparing this case, reading the instructions, reading our earlier panel's decision here. And I've been doing these cases for a long time, and I'm a little surprised the question has not occurred to me before. At what point, if ever, does the qualified immunity standard drop out, and this become merely a question of constitutional violation? The instruction that I'm reading here is really instruction as to constitutional violation, and there's nothing in here that says the officer is protected if no officer would have made, whatever it is, the qualified immunity standard. No reasonable officer would have understood that he was allowed to do this. This just looks like a constitutional violation instruction. This does not look like a qualified immunity instruction. Is that gone as soon as you go to trial? Your Honor, first off, as it relates specifically to the case, we were not asserting the qualified immunity defense at trial. We didn't ask the trial court. Why didn't you? Well, based on my prior experience trying a whole bunch of these cases, that it seemed like an exercise in futility. There have been times when I have asked the trial court that there should be a mixed question of law and fact, and it seems like that that is contemplated, at least in the Ninth Circuit instructions, but we felt like that our resources and our energy were better spent elsewhere. That's the answer to the question. You didn't even assert qualified immunity at trial. I think you could have. I don't know why you didn't. Well, we would be back here as well, Your Honor, and we felt like that factually, that, again, we had fantastic facts. I don't think qualified immunity drops out as a defense as soon as you go to trial, although I may be wrong on this. This is a question that has never occurred to me because I always assumed that qualified immunity stayed an issue until you got the final judgment. It was not merely an issue, only a summary judgment. The question is not presented because you didn't argue qualified immunity. And that's correct, Your Honor, although Mr. Ford and I may be back two and a half years from now on another case discussing this. But we did not assert the qualified immunity defense. And we think that the instructions that were given were in keeping with the earlier summary judgment motion ruling. And even if the law of the case actually dictated that Judge Zille provide these instructions, we would argue that it was harmless because we presented no evidence and we made no arguments that were in contradiction to what the earlier holding on summary judgment was. We did not assert this is an intermediate force. Instead, we just kept going back to the fact that this was a totality-of-the-circumstances analysis and that this incident did not happen in a vacuum. And I think it's telling that through all the briefing, all the arguments, Mr. Ford still, the Blondins, refused to acknowledge that this was a very volatile scene. We had a man actively trying to commit suicide. He'd already taken affirmative steps to commit suicide in that he had a hose running from his exhaust into the interior of his car. His children had reported to 911 that he always had a firearm with him and that he was willing to use it. And that once they had the neighbor out of the car, there was still a struggle going on for upwards of 45 seconds to a minute, according to the officers. The officers were so concerned that there was going to be bloodshed at the scene, an ambulance was staged just a block and a half away. And all of the other neighbors realized that this was dangerous. There were two civilians that testified at trial that they said that they knew to keep their distance, and one of them said, I tried to keep something between me and what was going on over there because I was concerned, quote, about bullets buzzing by or going by. So everyone but Mr. Blondin understood that this was a volatile scene. And now, even after trial, and here arguing about whether the verdict should be overturned, the appellants refused to acknowledge that this did not happen in a factual vacuum, but instead that the officers were confronted with extremely dangerous circumstances. We believe that the trial court's instructions were well within his latitude. They conformed to the facts of the case. It didn't preclude the plaintiffs from, you know, arguing their theories, and that this verdict should be affirmed. I'd be glad to address any questions if the court has any. Any further questions? No questions. Thank you. Mr. Ford? We accept, as we accept all the facts, that this was a dangerous situation. So you're an officer, you've got a dangerous situation, there's a man coming up saying, what are you doing to my neighbor? And you don't want to have a distraction. You're standing there, he's not moving, he's not doing anything. So what do you do? You shoot him with a taser, which requires one of the people who's trying to take the person into custody behind you to come help you take him into custody. It makes no sense. It was the rhetorical power of these lawyers and the failure of the trial court to give the jury the law that made this verdict. Yes, it would be a jury question of what's momentary, but the jury was never told momentary. We asked the court to tell the jury about a momentary failure, but they refused. There's nothing in the instructions about that. If the instructions are proper, do you argue that we should nonetheless reverse because there's insufficient evidence under these instructions? Yes, yes. The whole argument is that he didn't move for, and there's nothing about a minute. There's no testifying about a minute I know of. There's a testimony for about 5 to 10 seconds. Were you the trial attorney? Yes. There was testimony of up to 30 seconds. We just sent in an additional authority in which this court held there was no grounds for an arrest when there was much more time than 30 seconds of an individual not complying. There's 30 seconds. He could have stood there. He wasn't doing anything. Shelton wasn't involved in this. He was guarding it. That's what he was doing. Nothing was happening until Shelton started screaming and Shelton fired the taser. That's what caused the distraction. That's what every officer said. We accept their testimony. Qualified immunity was out of the case because municipal liability was also an issue and they don't have qualified immunity, and their policy said a taser is the lowest level of force. Well, no, that's not a very satisfactory answer so long as it would be if only the county were being sued. Was that true, only the county was being sued? No, both. Both were being sued. They were both being represented by the same people. Then your answer is an incomplete answer because the county doesn't have qualified immunity. That's Manel, but the officer does. The complete answer is it dropped out of the case. They didn't ask for it. It wasn't in the case. So this was decided on the law as it is now. There's nothing looking back. They say they didn't belittle the taser. Look at transcript 155. I'm sorry I didn't put this in the opening statement. Mr. Jolly told the jury that it was just the same as walking down on a rug and putting your finger against something and having a little shock of your static electricity. Did you put in evidence that says, I mean it's out there in the world, to say that tasers can be fatal? Did you have your own expert as to what tasers can do? Yes, we did. So the jury heard that then. We had a battle of experts over what this court had already resolved in bank in the Matos and Brooks case. They knew then that tasers were serious business. That's what we told them, but they had Officer Shelton said it was testified at ER 305 that it was a low level of force. Officer Shelton testified, the defendant, at ER 13 that it reduced injuries. Officer Shelton testified again that it was a low level of force at ER 236. Their expert testified that it was a reasonable use of force. It was the same as a takedown. That was at ER 735. Got it, okay. Do I still have time or am I going over time? I'm going over time at this point. You'd like to sum up? I would like to sum up. We accept everything that they said. This was a man doing exactly what this court said. There were some questions of time and distance that were a little different, but what this court said the law was in this court's appellate opinion would have required a verdict in our favor, and the jury was never told of it. That's all. Okay. Thank you. Thank you very much. Gravelot Blondin v. Shelton, City of Sonoma, submitted for decision, and that completes our argument for this morning. We're now adjourned.
judges: W. Fletcher, Gould, N.R. Smith